IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**CHRISTOPHER DOSS**                                                       **PLAINTIFF**

**V.**                          **CASE NO. 4:13CV121SWW**

**THE CITY OF ALEXANDER; CHIEF HORACE
WALTERS, Individually and his Official Capacity as
Police Chief for the Alexander Police Department;
JEFFREY WATSON, in his Individual Capacity;
WILLIAM BLANKENSHIP, in his Individual Capacity;
SALINE COUNTY; BRUCE PENNINGTON,
Individually and in His Official Capacity as Saline
County Sheriff; TIM GREEN, in his Individual
Capacity; AND PAUL BABBIT, In his Individual Capacity**        **DEFENDANTS**

**BRIEF IN SUPPORT OF SEPARATE DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

COME Separate Defendants, Horace Walters, in his individual and official capacities, Jeffrey Watson, William Blankenship, each in their individual capacities, and the City of Alexander, Arkansas, Defendants, and for their Brief in Support of their Motion for Summary Judgment, state:

**I.    INTRODUCTION**

Christopher Doss has alleged numerous claims against the City of Alexander and two of its police officers, yet his claims fall flat. As an initial matter, Mr. Doss brings suit against Officer William Blankenship without alleging Blankenship committed any wrongdoing and without even knowing who Blankenship is. Next, Mr. Doss alleges that Officer Jeffrey Watson violated the First, Fourth, Fifth, and Fourteenth Amendment, as well as 42 U.S.C § 1981, and 42 U.S.C. § 1985. Mr. Doss' claims against Officer Watson, however, are meritless. Mr. Doss cannot provide any evidence of retaliatory intent or racial animus underlying his arrest, so his § 1981 and § 1985 claims both fail. His Fifth Amendment claims fails because none of the

1

Defendants are federal officers. And, his Fourteenth Amendment fails because his claims are properly analyzed solely under the Fourth Amendment. As for his Fourth Amendment excessive force claims, because Officer Watson did not tase him that claim, too, fails.

As for the lone claim that makes any kind of sense – the Fourth Amendment claim for arrest without probable cause – that claim fails, too, because probable cause existed for his arrest. By cussing, hollering, and yelling in the presence of Officer Watson, arguable probable cause existed for his arrest for disorderly conduct. Considering all this, there are no violations of law, and thus, no grounds for liability against the City, Chief Walters, or Officer Watson.

## II. STATEMENT OF THE CASE

At or around 12:03 in the morning on October 9, 2011, Lashanda Billiups called 911 to have police escort her while she retrieved her things from the house her and Christopher Doss shared located at 15523 2nd street. *Statement of Uncontested Material Facts* ¶ 1. Officer Jeffrey Watson responded and arrived at Mr. Doss' residence at 12:06. *SUMF* ¶ 2. Immediately prior to arriving at Mr. Doss' house, Officer Watson met Ms. Billiups on the corner of Vine and 2nd Street; there she told Officer Watson that wanted to get here kids out of the house. *SUMF* ¶ 3. After this brief conversation, Ms. Billiups followed Officer Watson "two trailers down to where [Officer Watson] met with Mr. Doss." *SUMF* ¶ 4.

Once at the scene, Mr. Doss, who had been drinking since 1:00 p.m., proceeded to cuss, holler, and scream at Ms. Billiups and Officer Watson. *SUMF* ¶ 5, 15. Mr. Doss went so far as to call Ms. Billiups a "bitch" and, perhaps, other names. *SUMF* ¶ 6. Officer Watson had Ms. Billiups sit in the back of his patrol car as her and Mr. Doss continued to argue through the patrol car window. As they were arguing, Officer Watson ordered Mr. Doss to stay in the yard. *SUMF* ¶ 7. Mr. Doss, however, approached the patrol car and stood in the street to continue to argue

with Ms. Billiups. *SUMF* ¶ 8.  To neutralize the situation, Officer Watson requested backup to his location. *SUMF* ¶ 9.

By the time Officer Blankenship arrived at the scene – at 12:09 – Mr. Doss had calmed down and Officer Watson cancelled his request for backup. *SUMF* ¶ 2, 10.  Three county units (including Deputy Tim Green) had also responded, but had not made it to the scene when Officer Watson cancelled his request. *SUMF* ¶ 11.   At that time, the county officers were only a block away from Mr. Doss' house, and Officer Watson and Blakenship met the nearby county deputies to tell them about the disturbance call at Mr. Doss' house. *SUMF* ¶ 11.

According to officers, as Officer Watson spoke, Mr. Doss came out into the street and began cursing, shouting, and screaming while in the street towards the officers. *Exhibit 4*, 22:18-24*; Exhibit 2*, 42:11-12.  At that time, officers went back to Mr. Doss' house to arrest for, *intera alia*, Disorderly Conduct and Drinking in Public. *SUMF* ¶ 13.

According to Mr. Doss, the officers arrived at his house "with the intention of placing him under arrest" and told him "to get [his] hands up and turn around and get on the ground." *Exhibit 1*, 58:7-15.  Mr. Doss says he obeys the officers' orders and then, for no reason, was tased three times after officers cuffed him and walked him to Officer Watson's patrol car. *Exhibit 1*, 88:20-23.

According to Officer Watson and Deputy Green, Mr. Doss was told three times to get on the ground because was being placed under arrest. *Exhibit 2*, 43:1-8.  Instead of complying, Mr. Doss, began cussing the officers saying "fuck you, I'm not going to jail" and turned away from the officers. *Exhibit 4,* 24:10-13.  Another officer then grabbed one of Mr. Doss' arm as another officer grabbed the other arm. *Exhibit 4*, 24:15-23.  Mr. Doss then began "jerking around, screaming and hollering and cussing. *Id.*  Deputy Green then pulled his taser and warned Mr.

Doss that he would be tased if he did not stop resisting; Mr. Doss, however, "kept on, kept on," and then Deputy Green tased Mr. Doss. *Id.*  After being tased, Mr. Doss went to the ground but was still was struggling and had his hands underneath him in his waistband. *Exhibit 4*, 26:9-17. One officer told Mr. Doss: "Chris get your hands out, get your hands out;" yet, Mr. Doss would not remove his hands from underneath himself. *Id.*  Deputy Green, again, warned Mr. Doss, "if you don't get your hands out you're going to get tased again;" Mr. Doss did not and Deputy Green tased him, again. *Id.*  After that second tase, officers were able to get Mr. Doss' hand out and handcuff him. *Id.*  However, even after that, Mr. Doss, according to officers, continued to "fight and resist." *Exhibit 4*, 26:9-17.  As officers took Mr. Doss to Officer Watson's patrol car, Mr. Doss kicked the side of Watson's unit. *Exhibit 1,* 43:5-8.   At that time, Deputy Green tased Mr. Doss one last time in order to get Mr. Doss under control. *Id*.  After the final tase, Officer Watson transported Mr. Doss to the Saline county jail. *SUMF ¶* 14.

### III.     MOTION FOR SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that a motion for summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c).  The party moving for summary judgment has the initial burden of informing the court of the basis for its motion and identifying the pleadings, admissions, discovery documents and affidavits it contends show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. However, the moving party does not have the burden of negating the other party's claim. The movant meets its burden merely by "pointing out" to the district court that there is an "absence of evidence to support the nonmoving party's case." *Id*. at 325.  The nonmoving party must then go

beyond its own pleadings to designate specific facts raising a genuine triable issue. *Id.* at 324; *See also Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988).

## IV.     ARGUMENT

### A.     The Vast Majority of Mr. Doss' Claims Require Little Discussion and Should Be Summarily Dismissed

The only claim made by Mr. Doss which requires detailed discussion is his claim against Officer Watson for arrest without probable cause. As explained briefly below, the remaining claims should be summarily dismissed.

#### Deputy Green, and Not Officer Watson, Tased Mr. Doss

There is no dispute that Officer Watson did not use **any** force against Mr. Doss; and, Mr. Doss' only claim is that the tasing was excessive. As Deputy Green – and not Officer Watson – tased Mr. Doss, no claim for excessive force against Officer Watson can exist and should be dismissed.

#### Mr. Doss Makes No Allegations Against Officer Blakenship

As for Officer Bill Blakenship, Mr. Doss does not know who Officer Blakenship is and has made no claims that Officer Blakenship committed any violation; thus, the claims against Officer Blakenship must be dismissed, too. *Exhibit 1,* 78:21-22 ("Q: Do you know a man named William Blankenship? A: No, sir, I don't.").

As for Mr. Doss' other claims, aside from his Fourth Amendment probable cause claim against Officer Watson, those claims are either wholly unavailable to him, wholly superfluous in light of the Fourth Amendment claim, or wholly without merit.

### **Mr. Doss' § 1981 and First Amendment Claims Fail As He Has Offered No Evidence that any Discriminatory Animus was Afoot**

Mr. Doss vaguely claims in his complaint that the Defendants "retaliated against Mr. Doss for his previous complaints about the unlawful and racially discriminatory conduct of the Alexander City Police." *Amended Complaint,* ¶ 36 (b). Mr. Doss, however, offers nothing beyond that vague allegation. And, allegations are insufficient to support a cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even beyond that is Mr. Doss' sheer lack of evidence to connect his December 13, 2010 "complaint" to Chief Horace Walters to his arrest nearly a year later – a "complaint" that Chief Walters never received. *SUMF ¶* 23. As such, Mr. Doss' allegation of a First Amendment violation wholly fails.

Moreover, the "complaint" was made in reference to Mr. Doss' December 11, 2010 arrest at the hands of Officer Dennis Eckman for public intoxication, disorderly conduct, and terroristic threatening. None of the officers who are being sued by Mr. Doss in this case were involved in Mr. Doss' December 11, 2010 arrest, and Mr. Doss does not allege that any of them knew of the complaint. More importantly, despite Mr. Doss' insistence – in his "complaint" of the December 11th arrest – that he was "arrested because [he] was with a white girl," Mr. Doss was found guilty of committing the crimes of public intoxication, disorderly conduct, and terroristic threatening. *SUMF ¶* 24. With that in mind, it is difficult to consider Mr. Doss' "complaint" meritorious.

In light of the fact that Chief Walters did not receive the complaint, that none of the officers in this case knew of the complaint, that Mr. Doss' earlier "complaint" was without merit, and that Mr. Doss makes no connection between the two; Mr. Doss present claim fails.

Likewise, Mr. Doss makes no allegation that any of the officers had any racial animus towards him. Without that fundament element, Mr. Doss' § 1981 claim fails, too. *Williams v. Lindenwood University*, 288 F.3d 349, 355 (8th Cir. 2002); see also *Washington v. Simpson*, 806

6

F.2d 192, 197 (8th Cir. 1986) (Vague § 1981 allegation that race motivated plaintiff's arrest failed even in light of uncorroborated testimony that the arresting officers during his arrest called him "nigger" and told him he was being arrested for "being in the presence of a white woman.")

### Mr. Doss' § 1985 Claim Fails for Lack of Any Support

Like Mr. Doss' § 1981 claim, his § 1985 claim for the defendants' alleged conspiracy "to deprive him of his stator and constitutional rights" is nothing more than a bare allegation. And, like a § 1981 claim, a § 1985 claim is predicated on some racial animus that motivates the conspiracy – none exists. *See Griffin v. Breckenridge,* 403 U.S. 88, 102-03 (1971); *Larson v. Miller,* 76 F.3d 1446, 1454 (8th Cir. 1996).

Furthermore, Mr. Doss offers nothing to support any allegation of racial animus – an essential element of a § 1985 claim, too. Even if Mr. Doss had even bothered to speculate that such animus exists, such "[s]peculation and conjecture are not enough to prove a conspiracy exists." *Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999). For those reasons, too, Mr. Doss' § 1985 claim fails.

### Mr. Doss' Fifth Amendment Claim Fails; the Defendants Are Not Federal Officers

In addition, Mr. Doss' Fifth Amendment claims are inappropriate as the Fifth Amendment cannot serve as the basis for §1983 liability against a defendant unless Mr. Doss was subject to federal action. See *Warren v. Government Mortgage Ass'n*., 611 F.2d 1229, 1232 (8th Cir.), cert. denied, 449 U.S. 847 (1980). Mr. Doss claim is that of a constitutional violation at the hands of state actors; therefore, a Fifth Amendment claim is not applicable.

### Mr. Doss' Fourteenth Amendment Claim Fails as the Fourth Amendment is the Only Appropriate Cause of Action

As an additional introductory matter, Mr. Doss' claims of a Fourteenth Amendment violation are improper because the question of whether the use of force was excessive is solely a

7

Fourth Amendment question. The Supreme Court has been clear that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing' such a claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). Thus, based on Mr. Doss' claims, the particular amendment providing an explicit textual source of protection is the Fourth Amendment, and thus it is the only appropriate amendment under which to bring suit.

B. **Officer Watson Is Entitled to Summary Judgment and/or Qualified Immunity As to the Remaining Fourth Amendment Claim**

Officer Watson did not arrest Mr. Doss without probable cause, and he is thus entitled to summary judgment as to that claim. However, even if Watson had arrested Doss without probable cause, Officer Watson is entitled to qualified immunity as no reasonable officer would know that arresting someone in this situation would violate a clearly established right.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is immunity from suit, not a mere affirmative defense to liability. *Id*. The Supreme Court created a two-prong analysis to use to resolve cases in which the defendants claim qualified immunity. Id. Courts must decide whether the plaintiff's constitutional rights were violated, and if so whether the right was clearly established at the time of the defendant's actions. *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). Courts may use their discretion to determine which prong to analyze first. Id. at 236.

8

Officers are entitled to qualified immunity when their behavior does not violate clearly established law. *Id.* at 243. The inquiry asks whether the officer's conduct was objectively reasonable "in light of the legal rules that were clearly established at the time." Id. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). Qualified immunity ensures that officers are subjected to suit only when they are on notice that their conduct is unlawful. *Saucier v. Katz*, 533 U.S. 194, 206 (2001). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

### 1. Officer Watson, and All the Officers on the Scene, Had Probable Cause to Arrest Mr. Doss

The existence of probable cause in his arrest is fatal to Mr. Doss' claim of false arrest. *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1079 (8th Cir. 1990). A warrantless arrest requires probable cause. *United States v. Travis*, 993 F.2d 1316, 1323 (8th Cir. 1993) (citing *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)), *cert. denied,* ––– U.S. ––––, 114 S.Ct. 229, 126 L.Ed.2d 184 (1993).

"Probable cause to arrest exists when, at the moment the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225 (1964); *Brodnicki v. City of Omaha,* 75 F.3d 1261, 1264 (8th Cir. 1996). Police officers are entitled to "substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Washington,* 109 F.3d 459, 465 (8th Cir. 1997).

As discussed fully below, the undisputed material facts clearly demonstrate that Officer Watson and Officer Blankenship had probable cause to arrest Mr. Doss. Mr. Doss disputes the

9

testimony that he yelled at the officers, or used threatening language, but even assuming he is correct, the officers still had probable cause to arrest him. *Exhibit 4*, 22:18-24*; Exhibit 2*, 42:11-12.  Mr. Doss admits that while in the presence of Officer Watson he was yelling and arguing with Ms. Billiups.  During this argument with Ms. Billuips, Mr. Doss admits to telling her "she's, you know, a bitch or whatever," and "might have" called her other names. *SUMF* ¶ 6.

Mr. Doss had begun drinking beer at 1:00 p.m. and cannot recall if he began drinking more after the fight with his wife. *SUMF* ¶ 15.  Finally, in his Amended Complaint Mr. Doss states that when he was ordered to the ground by the officers, instead of complying he asked "why," although, admittedly in his deposition he alleges he fully complied with the officers' orders.  *See Amended Complaint ¶ 14; SUMF ¶ 20*.

If the officers had probable cause to arrest Mr. Doss for one of the offenses he was charged with, then they are justified in arresting him; even if they mistakenly thought they "had probable cause for other offenses as long as probable cause existed for the one offense." *Linn v. Garcia*, 531 F.2d 855, 862 (8th Cir. 1976).

In the instant case Mr. Doss was placed under arrest for disorderly conduct and public intoxication. *SUMF* ¶ 13.  Even using Mr. Doss's allegations as facts his conduct still constituted disorderly conduct, if not the other crimes.  The crime of Disorderly Conduct is codified at Ark. Code Ann. § 5–71–207, and provides in pertinent part:

> (a) A person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk thereof, he:
> (1) Engages in fighting or in violent, threatening, or tumultuous behavior; or
> (2) Makes unreasonable or excessive noise; or
> (3) In a public place, uses abusive or obscene language, or makes an obscene gesture in a manner likely to provoke a violent or disorderly response[.]

In *Johnson v. State*, the Arkansas Court of Appeals upheld a conviction under this disorderly conduct statute. 70 Ark. App. 343, 346, 19 S.W.3d 66, 69 (2000) *aff'd*, 343 Ark. 343, 37 S.W.3d 191 (2001). The arresting officer stated that the arrest was based on the arrestee "cursing out loud in the street" in violation of the disorderly conduct statute. *Id*. The court found that because the arrestee was found by police officers; "flailing his arms around, yelling, cursing," took his shirt off, and balled his hand into a fist, that he could be found guilty of all three sections of the disorderly conduct statute. *Id*.

Based on the undisputed facts as discussed fully above, Officers Watson had probable cause based on the totality of the circumstances to arrest Mr. Doss for disorderly conduct. Officer Watson personally witnessed Mr. Doss shouting profanity at his wife, it was perfectly reasonable for him to conclude that this constituted disorderly conduct for the purpose of annoyance. If as seen in *Johnson*, that cursing out loud in a street, or yelling and cursing, is enough to sustain a conviction under section (a)(2), then surely Mr. Doss's yelling and swearing here constitute at least probable cause for violation of the statute. Furthermore, section (a)(2) of the statute has been interpreted to apply to private and public property, so that these events occurred at Mr. Doss's residence is unimportant. *M.T. v. State*, 2009 Ark. App. 761, 350 S.W.3d 792, 795 (2009)

Thus, Mr. Doss' Fourth Amendment claim fails, and Officer Watson is entitled to summary judgment.

### 2. Even if a Violation Occurred, It Was Not Clearly Established That the Arrest of Mr. Doss Would Violate His Constitutional Rights

Even if the Officer Watson committed a violation by arresting Mr. Doss without probable cause, he is entitled to qualified immunity. With specific regard to Mr. Doss's claims relating to the lack of probable cause,"[t]he issue for immunity purposes is not probable cause in fact but

arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right. *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996).

As discussed fully above, Mr. Doss violated the disorderly conduct statute of Arkansas; yet even if that was not sufficient, Officer Watston had, at the very least, arguable probable cause to believe Mr. Doss was making "unreasonable or excessive noise" for the purpose of annoyance, when he was yelling and swearing at Ms. Billiups.  Thus, Officer Watson is entitled to qualified immunity.

C.  **No Liability Exists Against Chief Walters as He Was Not Involved in the Arrest of Mr. Doss; and Chief Walters Did Not Fail to Train or Supervise Officer Watson**

Mr. Doss' claim that Chief Walters is liable in his individual capacity is without merit and support.  First, without an underlying constitutional violation, there can be no supervisor liability. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007).  Second, Chief Walters had no role, either direct or indirect, with Mr. Doss' arrest.  Thus, Chief Walters cannot be individually liable as Watsons' supervisor, and Chief Walters is entitled to summary judgment in his individual capacity for failure to supervise and train.

Assuming *arguendo* an underlying constitutional violation had occurred, Mr. Doss must – but cannot – show that Chief Walters, "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [Doss]." *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012) (quoting *Jane Doe A. v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990) (internal quotations omitted)).  In order to show deliberate indifference or tacit authorization, Mr. Doss must allege and ultimately prove that Chief Walters "had notice that the training procedures and supervision were inadequate and

12

likely to result in a constitutional violation." *Livers*, 700 F.3d at 356 (quoting *Jane Doe A.,* 901 F.2d at 645.).

To put a supervisor on the requisite notice, the unconstitutional acts of inferior employees must be very similar to the conduct giving rise to liability. *See Livers*, 700 F.3d at 356 (holding that dishonest acts of a subordinate were not similar enough to falsifying evidence to impose supervisor liability); *Jane Doe A.*, 901 F.2d at 646 n. 4 (holding notice of an employee's sexual misconduct with adults did not provide notice of his sexual misconduct with children).

Even when viewed in a light most favorable to Mr. Doss, the facts reveal nothing to suggest Chief Walters received any notice of a pattern of unconstitutional acts committed by Officer Watson, that may have caused Mr. Doss to be unlawfully arrested. Mr. Doss appears to be relying on this single incident to support his claim, and it is insufficient to do so. Further, to the extent that Mr. Doss alleges his prior arrests for public intoxication were unlawful, out of the "six or seven" times he was arrested on public intoxication he admits he pled guilty or was convicted the majority of the times. *SUMF ¶* 25. Indeed, as a matter of law, a guilty plea is binding a confession of guilt. *Blohm v. Commissioner of Internal Revenue,* 994 F.2d 1542, 1554 (11th Cir. 1993) ("A guilty plea is more than a confession which admits that the accused did various acts. . . . A guilty plea is an admission of all of the elements of a formal criminal charge." (citations and internal quotation marks omitted)); *United States v. Williams,* 642 F.2d 136, 139 (5th Cir. 1981).

Additionally, no evidence shows a pattern of using excessive force by any officer of the Alexander Police Department, and specifically none by Officer Walters. The use of force reports since 2009 and the date of Mr. Doss's arrest show: 1) an instance where "Officer Hawkins" used a police baton to subdue an arrestee hiding in an attic, 2) Officer Brad Williams used "OS spray"

or pepper spray, when person refused to leave a convenience store, had to be removed from the store, and attempted reentry against the express orders of the police officers, and 3) Officer Fenton, used a taser to subdue a criminal resisting arrest on 1/31/2013. *SUMF* ¶ 20. Further, to support his claim Mr. Doss notes three instances of excessive force. The first incident Mr. Doss alleges is a shooting from "seven or eight" years ago, well before Chief Walters began work as Alexander's Chief of Police on May 28, 2010. *SUMF* ¶ 21-22. Next, he alleges an incident where an officer pushed a man through a door, and the man "fell and bumped his head" Mr. Doss admits this occurred "a while back." *SUMF* ¶ 21. Finally, Mr. Doss alleges a friend of his was shot by an Alexander officer, but this occurred in 2012 or 2013, and thus came after Mr. Doss's arrest, so this incident could not have provided any notice to Chief Walters. *SUMF* ¶ 21.

All of the incidents noted by Mr. Doss are irrelevant because they came before Walters was the Chief of Police, or after Mr. Doss's arrest. Furthermore, the other incidents were all lawful uses of force, and do not involve either officer named in this case. Actually, the only relevant use of force incident is where a taser was used, and there are no allegations that the incident was unlawful, or involved any officer in this case. Therefore, there is no reason to believe that Chief Walters had any notice of excessive force being used by his subordinates, and if he did none of the incidents are similar enough, as required by *Livers*, to have put him on notice that in this instance there would be excessive force.

Truly, Mr. Doss's conduct only shows a pattern that he has lawfully been arrested, pled guilty to, and been convicted of public intoxication. Simply put, Mr. Doss has failed to carry his burden of evidentiary proof, he has made no suggestion that would indicate that Chief Walters had any knowledge of previous incidents resulting in constitutional violations by Officer Watson

or Blankenship. Thus, Chief Walters is entitled to summary judgment and qualified immunity in his individual capacity for failure to supervise and train.

### D. Mr. Doss Has Offered Nothing to Establish Municipal Liability Against the City of Alexander

Because no constitutional violation has occurred, the City of Alexander cannot be liable. "This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005). Even if a violation had occurred, Mr. Doss has not offered any evidence that a practice, policy or custom existed that motivated a constitutional violation. Thus, Mr. Doss' claims against the City of Alexander must, too, be dismissed.

Again, assuming *arguendo* Mr. Doss could demonstrate that a constitutional violation occurred, municipalities may not be held liable for the unconstitutional acts of their officials under a theory of *respondeat superior*. *E.g.*, *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, for municipal liability to attach under § 1983, a plaintiff must prove that a municipal policy or custom was the moving force behind the alleged constitutional violation. *Id*; *see, e.g., Handle v. City of Little Rock*, 772 F.Supp. 434, 437 (E.D. Ark. 1991) (holding that municipal liability may attach when the alleged unconstitutional act "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [municipal officials]."). As discussed below, Mr. Doss has not and cannot demonstrate that the alleged constitutional violation was caused by a municipal policy, practice, or custom, and therefore, the City is entitled to summary judgment. However, as discussed below, Mr. Doss cannot establish municipal liability on any theory, and the City is entitled to summary judgment.

### 1.     The City's Written Policies are Constitutional on Their Face

"The written, official policy of a city is to be given great weight in determining what the city's policies are." *Williams-El v. Johnson*, 872 F.2d 224, 230 (8th Cir. 1989). "[A] municipal policy is not unconstitutional if it might *permit* unconstitutional conduct in some circumstances; it is unconstitutional only if it '*requires* its officers to act unconstitutionally.'" *Handle*, 772 F.Supp. 434, 438 (citing *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1554 (11th Cir. 1989)) (emphasis in the original). A written, official policy that satisfies all statutory and constitutional requirements is constitutional as a matter of law; it cannot be said that such a policy officially requires law enforcement officers to commit constitutional violations. *See e.g., Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) (finding that the policies comported to state laws governing training and education of law enforcement officers and that policies expressly directed officers to comply with constitutional standards). The written, official policies of The City do not require its law enforcement officers to act unconstitutionally, and these policies should be given great weight in determining what the City's policies are. For the reasons discussed below, Mr. Doss cannot create a genuine issue of material fact that The City's official policies require constitutional misconduct.

The City's written policies on arrest at the time of Mr. Doss's arrest were constitutional as a matter of law. With respect to detentions and arrests, the official policy of the Alexander Police Department required a law enforcement office to use, "legal justification and means for any arrest, search or seizure." *SUMF ¶* 26. It is patent that the preceding official, written policy requires officers to act reasonably and within authority granted to them by law. Therefore, it cannot be said that such policies simultaneously require officers to violate the Fourth Amendment. *See*, *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998) ("[a] policy cannot be both

an effort to prevent [an action] and, at the same time, deliberately indifferent to [that action]."). The same is true for Alexander's 2010 use of force policy which dictates that offices only use "force that is reasonably necessary to effectively bring an incident under control, while protecting the lives of the officer or another." *SUMF ¶* 27. This policy clearly comports with the reasonableness standard of the Fourth Amendment, and is therefore constitutional.

### 2. Mr. Doss Has Failed to Demonstrate the Existence of an Unofficial Policy, or Custom, that Was the Moving Force Behind An Alleged Violation

In order to prove the existence of a "municipal custom," a § 1983 plaintiff must demonstrate (1) existence of continuing, widespread, persistent pattern of unconstitutional misconduct by municipal employees; (2) deliberate indifference to or tacit authorization of such conduct by municipal policymaking officials after notice to officials of that misconduct; and (3) plaintiff's injury by acts pursuant to municipal entity's custom, i.e., proof that the custom was moving force behind the constitutional violation. *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 2000). *Id.* Mr. Doss has not, and cannot, demonstrate the existence of a municipal custom which caused her alleged constitutional violation, and The City is entitled to summary judgment.

### E. Mr. Doss's Arkansas Civil Rights Act Fail For the Same Reasons as the Claims Above Fail

Separate Defendants are entitled to summary judgment on all claims alleged under the Arkansas Constitution. A plaintiff asserting claims pursuant to the Arkansas Constitution also asserts claims pursuant to the Arkansas Civil Rights Act of 1993, i.e., Ark. Code Ann. § 16-123-101 (Supp. 1997), *et seq*. Courts, therefore, look to state and federal decisions interpreting 42 U.S.C. § 1983 law to construe the Arkansas Civil Rights Act pursuant to Ark. Code Ann. § 16-123-105(c) (Supp. 1997). Thus, the Court should analyze an unlawful arrest claim under the Arkansas Constitution in the same respect as it would analyze an unlawful arrest claim under the

United States Constitution. Therefore, the analysis of a claim under either constitution leads to the same result. Mr. Doss has failed to allege or provide evidence sufficient to preclude summary judgment on her constitutional claim and the Separate City Defendants are entitled to summary judgment on Plaintiff's claims brought pursuant to the Arkansas Constitution.

V. CONCLUSION

Mr. Doss' claims against Officer Blakenship should be dismissed as he has made no allegation against Officer Blakenship. Mr. Doss' First Amendment, § 1981 & § 1985 claims all fail for utter lack of support. Mr. Doss' Fifth Amendment claim fails as Officer Watson is not a federal officer. Mr. Doss' Fourteenth Amendment claim fails because the reasonableness of his seizure is best analyzed under the Fourth Amendment, and not the more generalized notion of due process. As for Mr. Doss' excessive force claim against Officer Watson, because Deputy Green tased Mr. Doss, his claims against Officer Watson for excessive force must fail. And, because probable cause existed against Mr. Doss, his claim against Officer Watson for arrest without probable cause also fails. Finally, because no constitutional violation occurred and because he offers no support for his claims, Mr. Doss' claims against Chief Walters and the City of Alexander fail, too.

WHEREFORE, Separate Defendants respectfully request that the Court grant their Motion for Summary Judgment and dismiss all claims against Separate Defendants with prejudice, and for all other relief that is just and proper.

Respectfully submitted,

HORACE WALTERS, in his individual and official capacities, JEFFREY WATSON, WILLIAM BLANKENSHIP, each in their individual capacities, and THE CITY OF ALEXANDER, ARKANSAS, Separate Defendants

By:   /s/ JOHN L. WILKERSON, ABA #2008046
Attorney for Separate Defendants
PO Box 38
North Little Rock, AR 72115
Tel: (501) 978-6128
Fax: (501) 978-6567
jwilkerson@arml.org

## CERTIFICATE OF SERVICE

I, John L. Wilkerson, hereby certify that on this 3rd day of January, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such filing to all counsel of record listed below; and I further certify that I have mailed the document via U.S. Mail, Postage Prepaid to all non-participating CM/ECF participants listed below.

Bridgette M. Frazier
1723 S. Broadway
Little Rock, AR 72206
bmf@thefrazierlawfirm.com

David M. Fuqua
Fuqua Campbell, P.A.
425 W. Capitol Ave., Ste. 400
Little Rock, AR 72201
dfuqua@fc-lawyers.com

George D. Ellis
Ellis Law Firm, P.A.
126 N. Main St.
PO Box 2307
Benton, AR 72018
gellisinbenton@swbell.net


  /s/ JOHN L. WILKERSON, ABA #2008046