**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**CHRISTOPHER DOSS**                                          **PLAINTIFF**

**V.**                              **CASE NO. 4:13CV121SWW**

**THE CITY OF ALEXANDER; CHIEF HORACE**
**WALTERS, Individually and his Official Capacity as**
**Police Chief for the Alexander Police Department;**
**JEFFREY WATSON, in his Individual Capacity;**
**WILLIAM BLANKENSHIP, in his Individual Capacity;**
**SALINE COUNTY; BRUCE PENNINGTON,**
**Individually and in His Official Capacity as Saline**
**County Sheriff; TIM GREEN, in his Individual**
**Capacity; AND PAUL BABBIT, In his Individual Capacity**          **DEFENDANTS**

## STATEMENT OF UNDISPUTED MATERIAL FACTS

COME Separate Defendants, Horace Walters, in his individual and official capacities, Jeffrey Watson, William Blankenship, each in their individual capacities, and the City of Alexander, Arkansas, Defendants, and for their Brief in Support of their Motion for Summary Judgment, state:

1.      On October 9, 2011, the Alexander Police were called out to Christopher Doss' residence because Lashanda Billiups requested police presence and an escort off the property. *Exhibit 1, Deposition of Christopher Doss*, 7:8-22; *Exhibit 2, Deposition of Jeffrey Watson*, *40:13-15*.

2.      Alexander Police Officer Jeffrey Watson arrived at the scene of the call at approximately 12:06 a.m., and then around 12:09 a.m. Officer Tim Blankenship arrived. *Exhibit 2*, 40:12-18; *Exhibit 3, Saline County CAD Dispatch logs pg.* 3.

3.     Immediately prior to arriving at Mr. Doss' house, Officer Watson met Ms. Billiups on the corner of Vine and 2nd Street; there she told Officer Watson that wanted to get here kids out of the house. *Exhibit 2, 40:15-18*.

4.     After this brief conversation, Ms. Billiups followed Officer Watson "two trailers down to where [Officer Watson] met with Mr. Doss." *Exhibit 2, 40:24-25*.

5.     Officer Watson states that Doss verbally abused him and Ms. Billiups throughout the incident. *Exhibit 2, 41:2-6*.

6.     Doss called Lashana "a bitch or whatever," and "might have" called her other names, all in the presence of Officer Watson. *Exhibit 1, 100:10-21*.

7.     Officer Watson had Ms. Billiups sit in the back of his patrol car as her and Mr. Doss continued to argue through the patrol car window.  As they were arguing, Officer Watson ordered Mr. Doss to stay in the yard. *Exhibit 2, 42:2-4*.

8.     Mr. Doss approached the patrol car and stood in the street to continue to argue with Ms. Billiups. *Exhibit 2, 41:8-9, 23*.

9.     Officer Watson requested backup because of Doss' escalating hostility, and so that other officers could help him de-escalate the situation. *Exhibit 2, 41:14-15*.

10.     He cancelled the call for backup because Doss had calmed down. *Exhibit 2, 41:8-11*.

11.     Three county units (including Deputy Tim Green) had also responded, but had not made it to the scene when Officer Watson cancelled his request. *Exhibit 2, 41:17-18*.

12.     At that time, the county officers were only a block away from Mr. Doss' house, and Officer Watson and Blakenship met the nearby county deputies to tell them about the

disturbance call at Mr. Doss' house. *Exhibit 2, 42:9-10; Exhibit 4, Deposition of Tim Green, 22:18-24.*

13.    After meeting, the officers went back to Mr. Doss' house to arrest for, *intera alia*, Disorderly Conduct and Drinking in Public. *Exhibit 2, 42:11-15; Exhibit 4, 23:23-25.*

14.    Officer Watson transported Mr. Doss to the Saline county jail, after his arrest. *Exhibit 2*, 43:10-11.

15.    Preceding the incident, Doss had begun drinking beer at 1:00 p.m. and cannot recall if he began drinking more after the fight with Ms. Billiups. *Exhibit 1, 48:13-14; 55:3-5.*

16.    Doss argued with Lashanda in the presence of Officer Watson, and admits to yelling and being "pretty sure" he raised his voice. *Exhibit 1, 50:19-21; 100:17-18.*

17.    According to Doss, he was not "loud enough that somebody might consider it a disturbance" because he "[didn't] have neighbors on either side of [his] at that time." *Exhibit 1, 50:22-51:2.*

18.    At no point during this arrest did the City Officers use any force to effectuate Doss' arrest. *Exhibit 2, 55:9-10.*

19.    The only person who tased Doss was Deputy Green. Exhibit 2, 8:14-16.

20.    The use of force reports since 2009 and the date of the Plaintiff's arrest show:

      a.    An instance where "Officer Hawkins" used a police baton to subdue an arrestee hiding in an attic. *Exhibit 5, Use of Force Documents, pg. 1.*

      b.    Officer Brad Williams used "OS spray" or pepper spray, when person refused to leave a convenience store, had to be removed from the store,

and attempted reentry against the express orders of the police officers. *Exhibit 5, pgs. 2-5.*

c.  Officer Fenton, used a taser to subdue a criminal resisting arrest on 1/31/2011. *Exhibit 5, pgs. 6-8.*

21.    Doss alleges three incidents of excessive force by the Alexander Police Department which are:

a. a shooting from "seven or eight" years ago. *Exhibit 1, 94:12-14*;

b. an incident where an officer pushed a man through a door, and the man "fell and bumped his head" the Plaintiff admits this occurred "a while back." *Exhibit 1, 94:16-24*;

c. In 2012 or 2013, a friend of Doss' was shot by an Alexander officer, but this incident was well after Doss' arrest. *Exhibit 1, 95:1-7.*

22.    Chief Walters began work as Alexander's Chief of Police on May 28, 2010. *Exhibit 6, Deposition of Horace Walters, 5:9-11.*

23.    Chief Walters never received Mr. Doss' December 13, 2010 "complaint," in reference to Doss' December 11, 2010 arrest. *Exhibit 6, 55:15-17.*

24.    Mr. Doss pled guilty to the charges against him stemming from his arrest on December 11, 2010. *Exhibit 7, Saline County Docket Sheet.*

25.    Mr. Doss has been arrested "six or seven" times for public in toxication, and he admits he pled guilty or was convicted on a majority of those arrests. *Exhibit 1*, 21:14-16; 22:15-18.

26.     The official policy of the Alexander Police Department required a law enforcement office to use, "legal justification and means for any arrest, search or seizure." *Exhibit 8, Alexander Policies and Procedures Manual 2010, pg*. 25.

27.     Alexander's 2010 use of force policy dictated that offices only use "force that is reasonably necessary to effectively bring an incident under control, while protecting the lives of the officer or another." *Exhibit 8, pg.* 277.

28.     The training requirements for City officers require the officers meet the "minimum requirements as established by the Executive Commission on Law Enforcement Standards and Training and the Arkansas Crime Information Center." It further requires that *Exhibit 8, pg.* 271.

Respectfully submitted,

HORACE WALTERS, in his individual and official capacities, JEFFREY WATSON, WILLIAM BLANKENSHIP, each in their individual capacities, and THE CITY OF ALEXANDER, ARKANSAS, Separate Defendants

By:     /s/  JOHN L. WILKERSON, ABA #2008046
Attorney for Separate Defendants
PO Box 38
North Little Rock, AR  72115
Tel:  (501) 978-6128
Fax:  (501) 978-6567
jwilkerson@arml.org

## <u>CERTIFICATE OF SERVICE</u>

I, John L. Wilkerson, hereby certify that on this 3rd day of January, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such filing to all counsel of record listed below; and I further certify that I have mailed the document via U.S. Mail, Postage Prepaid to all non-participating CM/ECF participants listed below.

Bridgette M. Frazier
1723 S. Broadway
Little Rock, AR  72206
bmf@thefrazierlawfirm.com

David M. Fuqua
Fuqua Campbell, P.A.
425 W. Capitol Ave., Ste. 400
Little Rock, AR  72201
dfuqua@fc-lawyers.com

George D. Ellis
Ellis Law Firm, P.A.
126 N. Main St.
PO Box 2307
Benton, AR  72018
gellisinbenton@swbell.net

/s/  JOHN L. WILKERSON, ABA #2008046